C. A. Hawkins v. Commissioner.
Hawkins v. Commissioner
Docket No. 10622.
United States Tax Court
1947 Tax Ct. Memo LEXIS 65; 6 T.C.M. (CCH) 1087; T.C.M. (RIA) 47277; October 8, 1947
*65 1. The fair market value of petitioner's fig orchard as of 1935, and the life expectancy of the fig trees, determined for depreciation purposes. 2. Petitioner and his wife were married in 1936. In 1937 they entered into a property settlement agreement fixing the status of their property and allocating income therefrom in accordance with a certain plan. Held, such agreement was legal and binding and should be applied in allocating income earned by their joint efforts from the operation of a fig orchard. Claude L. Rowe, Esq., 910-911 Pacific-Southwest Bldg., Fresno, Calif., for the petitioner. Leonard A. Marcussen, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $3,348.67 in the petitioner's income tax liability for the year 1941. In the amendment to his answer he claimed an additional deficiency of $51.83. The issues are: 1. The proper amount of a deduction for depreciation of the petitioner's fig orchard; and 2. The proper allocation of the petitioner's income to community income and to his separate income. Findings of Fact The petitioner resides near Fresno, California. He *66 filed his income tax return for the taxable year with the collector of internal revenue for the first district of California. The petitioner owned and operated a fig orchard which he acquired in September, 1935, upon the liquidation of the Hawkins Improvement Company. The orchard contained approximately 400 acres, composed of 160 acres of Calimyrna fig trees and 240 acres of Adriatic fig trees. Throughout the entire orchard roads, ditches, drying yards, buildings and equipment occupied about 14 acres. The petitioner was married to Adelia Comba, his present wife, in 1936. They then moved to the petitioner's ranch or orchard. Mrs. Hawkins owned two fig orchards, one (Adriatic) purchased in 1924 and the other (Calimyrna) in 1930. She supervised the operation of her own orchards. She had been a practicing attorney in San Francisco since 1913. She joined in the management of the petitioner's business by handling correspondence, superintending the bookkeeping and payments, receiving the moneys and allocating them to the proper accounts, preparing budgets and contracts of sale, making cost analyses, preparing income tax analyses and returns, making Government reports and rendering other *67 similar services, to the venture. The petitioner employed a "working foreman", who had charge of the physical work of the ranch. The petitioner himself supervised its operation, determined its policies, employed and discharged its employees and had general control of the conduct of the business. He took a prominent part in the development and stabilization of the fig industry in California. The income during the taxable year from the fig orchard was due primarily to the efforts, ability, skill and managerial capacity of himself and his wife. The petitioner was the father of children by a previous marriage. On February 2, 1937, he and his wife entered into an agreement entitled "Property Settlement Agreement", which recited that each had separate property; that they desired such property to remain separate and that they had agreed to devote their joint efforts especially to the care and management of the petitioner's fig orchard, and provided that such separate property of each should not lose its identity as such; that all income from the wife's separate property should remain her separate property; that one-third of all the net profits from the petitioner's separate property should *68 be considered to be the petitioner's separate income and property and the other two-thirds thereof to be community income and property. Petitioner returned his income in accordance with the above agreement. The petitioner's orchard is located in the Rosedale area of Fresno County, California. In 1935 it was the finest fig orchard in that section. The petitioner's production was superior, in quantity and quality, to the average California crop. The petitioner's standards of granding were higher than those of his competitors. The fair market value of the petitioner's Calimyrna fig trees in September, 1935, was $250 per acre and of his Adriatic fig trees, $325 per acre, both including land at a fair value of $50 per acre. The 14 acres occupied by roads, ditches, drying yards, buildings and equipment are not subject to the depreciation applicable to the fig trees. The fair market value of the land alone in 1935 was $50 per acre. The reasonable life expectancy of the fig trees in the petitioner's orchard in 1935 was 25 years. Opinion VAN FOSSAN, Judge: The first issue is solely one of fact. The amount of depreciation is governed by the fair market value - of the petitioner's fig *69 orchard in 1935 as a basis and the life expectancy of the fig trees as a determinant of the rate of depreciation. From a careful study of the voluminous record, including the testimony of witnesses fully conversant with the petitioner's orchard and the process and conditions of fig-raising in California and also pertinent comparatives relating to the fig production in that State, and to the petitioner's performance in that respect, we have concluded that the fair market value in 1935, the basic date, of his Calimyrna fig trees was $250 an acre and of his Adriatic fig trees, $325 an acre, including land at $50 an acre, and we have so found. Since 14 acres of the petitioner's orchard were occupied by roads, ditches, drying yards, buildings and equipment, some of which are not depreciable and others subject to their own independent depreciation, proper proportionate deduction will be made in the computation of the depreciation on the orchard. The evidence pertinent to the life expectancy of the fig trees was far from uniform. The life expectancy of the petitioner's particular trees is at best only an estimate, but, after weighing the testimony of those familiar with the industry and *70 having knowledge of the environment and conditions of growth surrounding the petitioner's orchard, we have found that the life expectancy of the petitioner's fig trees in 1935 was 25 years, with a consequent percentage of 4 per cent to be applied in determining the correct depreciation for the taxable year. The second question is the method of computing petitioner's income. Petitioner lives in California, a community property State. In the absence of an agreement to the contrary, earnings of the community would be divided equally between husband and wife for taxation. Under the law of California, however, the husband and wife may enter into an agreement with each other altering their legal relations as to property, and may change the character of property from community to separate property or from separate to community, whether acquired theretofore or thereafter. . The Court in that case also said: "* * * To answer the question whether earnings of petitioner received subsequently thereto were changed to separate property by said agreement, or retained their character as community property, we must look to the agreement. * *71 * *" The petitioner and his wife, in 1937, entered into such an agreement altering the incidence of the community property laws. By its terms the separate property of each remained separate property. It was further agreed that both should devote their efforts to the care and management of petitioner's fig orchard (his separate property under the agreement) and that one-third of the net profits therefrom should be petitioner's separate income while the remaining two-thirds should be community property (divisible equally between them). By this arrangement petitioner would receive as his share two-thirds of the earnings of the fig property and his wife would receive one-third. Since both were devoting all their services to the care and management of the property, the practical effect was to fix one-third as the amount of the return on petitioner's separate property as such and two-thirds as the value of the contributions in services of the husband and wife to be divided equally. Petitioner made his return in accordance with the above arrangement. Petitioner, with some reason, refers to the above arrangement as a partnership. We do not deem it necessary to rule categorically whether *72 the agreement was in legal effect a partnership because, in any event, we believe it to be a valid legal agreement which should be applied according to its terms to determine the allocation between petitioner and his wife of income earned from the operation of the fig property. See Interpreting the agreement as a settlement of the value of the respective contributions in property and services of petitioner and his wife to the joint enterprise, it does not conflict with . See , and cases there cited. See also , and . We accordingly hold that the agreement of the parties governs the allocation of the income earned by operation of the fig orchard and should be applied according to its terms. Decision will be entered under Rule 50.